FILED
2008 Sep-10  PM 03:19
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**NORTHWESTERN DIVISION**

| | | |
|---|---|---|
| **RICKY STEED,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case. No.: 3:07-CV-1388-RDP** |
| | } | |
| **MICHAEL J. ASTRUE,** | } | |
| **Commissioner of Social Security,** | } | |
| | } | |
| **Defendant.** | } | |

**<u>MEMORANDUM OF DECISION</u>**

Plaintiff Ricky Steed brings this action pursuant to Section 205(g) of the Social Security Act (the "Act") seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying his application for a period of disability and Disability Income Benefits ("DIB"). *See* 42 U.S.C. §§ 405(g), 1383(c)(3).  For the reasons outlined below, the court finds that the decision of the Commissioner is due to be affirmed because it is supported by substantial evidence and proper legal standards were applied.

**I.      Procedural History**

Plaintiff filed his application for a period of disability and DIB on May 20, 2004.  (Tr. 46). Plaintiff's application was denied and he requested a hearing before an Administrative Law Judge ("ALJ").  (Tr. 33-38).  Plaintiff's cause was heard by ALJ Earl Cates on March 1, 2007.  (Tr. 12, 280-314).  In his April 17, 2007 decision, ALJ Cates determined that Plaintiff was not eligible for a period of disability or DIB because he failed to meet the disability requirements of the Act and retained the residual functional capacity ("RFC") to perform light work.  (Tr. 12-23).  The Appeals

Council denied Plaintiff's request for review of ALJ Cates's decision on May 25, 2007.  (Tr. 5-7).

Within the required time limitations, Plaintiff filed his civil action in this court.

Plaintiff was born on May 15, 1956 and has a ninth grade education.  (Tr. 234, 283). He

alleges that he has been unable to engage in substantial gainful activity since January 6, 2004.[1]  (Tr.

280).  Plaintiff claims that he became unable to work due to degenerative disc disease, diabetes

mellitus, and a mild adjustment disorder. (Tr. 238, 258).

Prior to the alleged disability onset, Plaintiff was injured in an on-the-job accident.  (Tr. 287).

As a result of the accident, Plaintiff developed disc herniation at L4-5, a condition that required

surgery on November 5, 1997.  (Tr. 140).  The surgery was successful and Plaintiff was discharged

in "satisfactory condition."  (Tr. 139).

On June 19, 2000, Plaintiff presented at the emergency room with lower back pain.  (Tr.

160).  He returned to the emergency room with the same complaint on July 24, 2001.  (Tr. 170).

A third time, on March 19, 2003, he sought emergency treatment for back pain.  (Tr. 176).  After

these emergency treatments, Plaintiff began to see Dr. Wayne Stanley for treatment on his chronic

back pain on January 6, 2004.  (Tr. 201).  Dr. Stanley assessed Plaintiff as suffering from poorly

controlled diabetes, systolic hypertension, peripheral neuropathy, history of herniated nucleus

pulpous, prostatitis, and complaints of erectile dysfunction.  (*Id*.).  Dr. Stanley referred Plaintiff to

physical therapy and scheduled a follow-up consultation three weeks after the date of the initial

examination.  (*Id*.).  Plaintiff failed to show up to for his follow-up appointment and missed a second

follow-up as well.  (*Id*.).

---

[1]By written statement dated March 1, 2007, Plaintiff amended his alleged onset date of disability
to January 6, 2004.  (Tr. 12).

On January 12, 2004, after Plaintiff's first appointment with Dr. Stanley but before he missed the follow-up appointment, Plaintiff went to the emergency room complaining of back pain. (Tr. 208). When Dr. Stanley saw Plaintiff on March 8, 2004, Dr. Stanley prescribed Palemor for chronic pain and noted that Plaintiff had run out of his diabetes medication. (Tr. 198). After this visit, Plaintiff missed his next two appointments with Dr. Stanley. (*Id*.). Again, Plaintiff presented at the emergency room on June 4, 2004, suffering from severe back pain. (Tr. 218).

Plaintiff saw Dr. Stanley again on June 10, 2004. At that time, Dr. Stanley continued Plaintiff on Vicodin and Palemor. (Tr. 190). On May 4, 2005, Dr. Stanley continued Plaintiff on the same medications, noting that Plaintiff complained that his back still hurt. (Tr. 189). Dr. Stanley made no changes after another visit in June. (Tr. 188). Plaintiff saw Dr. Stanley again on August 30, 2005, and complained of continuing pain in his back and numbness in his fingers. (Tr. 186). Dr. Stanley wrote that Plaintiff was depressed at his inability to get disability. (*Id*.). He made no changes to Plaintiff's medication. (*Id*.). Subsequent visits in September, November, and December of 2005 led to refills of medication but no changes. (Tr. 183-85). Plaintiff saw Dr. Stanley a final time on January 11, 2006, with Dr. Stanley observing no changes and continuing Plaintiff's medication. (Tr. 200).

While Plaintiff was seeing Dr. Stanley, he also received care from Dr. Joel Pickett, his treating surgeon, for complaints of lower back pain. (Tr. 155). After noting that Plaintiff's x-rays appeared normal (with the exception of a small laminitomy defect at L4-5), Dr. Pickett opined that Plaintiff's pain was "muscoloskeletal in origin" and prescribed pain medication. (*Id*.).

Also during the time he was under Dr. Stanley's care, Plaintiff saw Dr. D. B. Laughlin for a consultative physical examination. (Tr. 234-35). Dr. Laughlin diagnosed Plaintiff as suffering

from "nonradicular muscoloskeletal back pain" and noted that "[t]he patient seems to have an excellent chance of recovery with appropriate self-physical therapy and anti-inflammatory meds and good control of his diabetes." (Tr. 235).

In July 2006, Plaintiff began to receive treatment from Dr. Flora Kayfan. (Tr. 263). Dr. Kayfan prescribed Lortab for pain. (*Id*.). The next month, Dr. Kayfan noted that Plaintiff complained of anxiety, radiating pain from his back, and numbness and continued Plaintiff on Lortab. (Tr. 261). X-rays that Dr. Kayfan ordered on August 14, 2006 came back normal. (Tr. 262). Dr. Kayfan referred Plaintiff to Dr. S. R. Reddy to perform a nerve study. The study, performed on September 5, 2006, gave objective confirmation that Plaintiff suffers from peripheral neuropathy and bilateral carpel tunnel syndrome. (Tr. 269-70). On October 5, 2006, Dr. Kayfan prescribed Hydrocodone for pain. (Tr. 275). Plaintiff received additional prescriptions for pain medications from Dr. Kayfan on December 1, 2006, and January 30, 2007. (Tr. 273-74).

## II.    ALJ Decision

Determination of disability under the Act requires a five-step analysis. *See* 20 C.F.R. § 404.1 *et. seq.* First, the Commissioner determines whether the claimant is working. Second, the Commissioner determines whether the claimant has an impairment which prevents the performance of basic work activities. Third, the Commissioner determines whether claimant's impairment meets or equals an impairment listed in Appendix 1 of Part 404 of the Regulations. Fourth, the Commissioner determines whether the claimant's RFC can meet the physical and mental demands of past work. The claimant's RFC consists of what the claimant can do despite his impairment. Finally, the Commissioner determines whether the claimant's age, education, and past work experience prevent the performance of any other work. In making a final determination, the

4

Commissioner will use the Medical-Vocational Guidelines in Appendix 2 of Part 404 of the Regulations when all of the claimant's vocational factors and the RFC are the same as the criteria listed in the Appendix. If the Commissioner finds that the claimant is disabled or not disabled at any step in this procedure, the Commissioner will provide no further review of the claim.

The court recognizes that "the ultimate burden of proving disability is on the claimant" and that the "claimant must establish a *prima facie* case by demonstrating that he can no longer perform his former employment." *Freeman v. Schweiker*, 681 F.2d 727, 729 (11th Cir. 1982) (other citations omitted). Once a claimant shows that he can no longer perform his past employment, "the burden then shifts to the [Commissioner] to establish that the claimant can perform other substantial gainful employment." *Id.*

The ALJ found that Plaintiff has not engaged in substantial gainful activity since January 6, 2004–his amended alleged onset date of disability. (Tr. 14). The ALJ determined that Plaintiff has a severe combination of impairments of: degenerative disc disease with back pain; diabetes mellitus; and a mild adjustment disorder. (Tr. 14-18). In spite of these impairments, the ALJ found that Plaintiff's impairments, considered either alone or in combination, fail to meet or medically equal the criteria of an impairment listed at 20 C.F.R. pt. 404, subpt. P, app. 1. (Tr. 18). According to the ALJ, Plaintiff's subjective complaints concerning his impairments and their intensity, persistence, and limiting effects were not fully credible due to the normality of Plaintiff's x-rays and the conservative course of treatment recommended by his doctors. (Tr. 20). The ALJ determined that Plaintiff retains the RFC to perform light work (Tr. 18-21), but found that Plaintiff could not perform his past relevant work. (Tr. 21).

At the hearing, the ALJ called a vocational expert ("VE") familiar with Plaintiff's background to testify. (Tr. 310-13). The VE testified that an individual with Plaintiff's limitations could perform jobs which exist in significant numbers in the regional and national economies. (Tr. 310). Based on the VE's testimony, the ALJ found that a significant number of jobs exist in the national economy that Plaintiff is capable of performing and that Plaintiff was not under a disability at any time through the date of the decision. (Tr. 22).

### III.    Plaintiff's Argument for Remand or Reversal

Plaintiff seeks to have the ALJ's decision, which became the final decision of the Commissioner following the expiration of the period for Plaintiff to file objections, reversed and remanded for further consideration. (Doc. # 10, at 9). Plaintiff asserts that there are two reasons why this court should grant the relief sought: (1) the ALJ improperly discounted Plaintiff's subjective testimony of pain; and (2) the ALJ failed to give proper weight to Dr. Kayfan's opinion that Plaintiff could not be gainfully employed.

### IV.    Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision

is reasonable and supported by substantial evidence.  *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted).  If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings.  *See Martin*, 894 F.2d at 1529.  While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance."  *Lamb*, 847 F.2d at 701.

## V.      Discussion

In light of the legal standards that apply in this case, the court rejects Plaintiff's arguments for reversal and remand.  For the reasons outlined below, the court finds that the ALJ relied on substantial evidence and applied the proper legal standards.

### A.      The ALJ Properly Weighed Plaintiff's Subjective Complaints of Pain

Plaintiff's first argument is that the ALJ did not give his subjective complaints of pain sufficient weight.  Specifically, Plaintiff urges that he has a well-documented condition that can objectively cause the alleged pain and that the ALJ did not have substantial evidence for rejecting his complaints.

The law that governs subjective complaints of pain is well-settled.

In order to establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence

confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain. *See Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir.1991). If the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so. Failure to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true.

*Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (some citations omitted). In this case, it is clear that Plaintiff carried his burden to establish that he has an underlying medical condition that can give rise to the pain from which he claims to suffer. However, the ALJ discredited his testimony about the severity of the pain and the limiting effects of the pain, relying on both medical evidence and inconsistencies in Plaintiff's behavior. The ALJ noted that Plaintiff's x-rays were normal and that none of Plaintiff's treating physicians noted functional limitations arising from Plaintiff's pain. (Tr. 20). He also emphasized that Plaintiff's doctors proposed a conservative course of treatment, focusing almost exclusively on pain medication. (*Id.*). The ALJ also noted that Plaintiff did not consistently attend his appointments or take his diabetes medication. (Tr. 20-21). Finally, the ALJ concluded that Plaintiff's complaints of debilitating pain were inconsistent with his pattern of attending regular doctor visits that result in routine renewals of prescriptions. (Tr. 21).

Considering the ALJ's findings in light of the applicable standard of review, the court finds no error. The ALJ properly considered Plaintiff's longitudinal history of back pain and the consistent treatment he received. He weighed Plaintiff's subjective complaints and concluded that, while the medical evidence supported a finding of severe pain, the evidence did not show that Plaintiff was disabled because of his pain. In discounting Plaintiff's subjective testimony, the ALJ relied upon substantial evidence and properly applied the law of this Circuit as articulated in *Wilson*. Accordingly, Plaintiff's first argument fails.

8

**B.      The ALJ Properly Discounted Dr. Kayfan's Opinion on Whether Plaintiff Could be Gainfully Employed**

Plaintiff also asserts that the ALJ should have given weight to Dr. Kayfan's opinion that Plaintiff "is not physically able to be gainfully employed."  (Tr. 272).  Plaintiff argues that "[s]uch a statement from a treating physician with the lengthy treatment history of Plaintiff warrants substantial weight in a disability decision."  (Doc. # 10 at 6).

Without question, the ALJ gave little weight to Dr. Kayfan's opinion on Plaintiff's ability to work.  The ALJ stated in his opinion that "Dr. Kayfan's opinion is inconsistent with her own medical records, as her records reflect the claimant only returned on a routine basis and was essentially seen for refills of his medications."  (Tr. 21).  The issue this court must determine is whether, under the applicable standard of review, the ALJ properly discounted Dr. Kayfan's conclusion that Plaintiff could not be gainfully employed.   The court concludes that the ALJ committed no error.

Dr. Kayfan is one of Plaintiff's treating physicians and therefore her opinion is entitled to substantial weight.  *McGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986).  However, an exception to this rule is that opinions on ultimate issues, such as a claimant's ability to work, are not medical opinions; the determination of the ability to work is a decision vested in the Commissioner. 20 C.F.R. § 404.1527(e); *Bell v. Bowen*, 796 F.2d 1350, 1353-54 (11th Cir. 1986) ("The regulation in 20 C.F.R. § 404.1527 provides that although a claimant's physician may state he is 'disabled' or 'unable to work' the agency will nevertheless determine disability based upon the medical findings and other evidence").  An ALJ may discount a physician's opinion if it is conclusory or inconsistent with the doctor's own medical records.  *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).

9

The court's inquiry is into the "doctors' evaluations of [Plaintiff's] condition and the medical consequences thereof, *not their opinions of the legal consequences of his condition*." *Id.* (emphasis added).

Here, the ALJ based his decision to discount Dr. Kayfan's opinion on substantial evidence. Nothing in Dr. Kayfan's treatment notes show that Plaintiff suffers from debilitating pain or has other conditions that prevent him from working.  Dr. Kayfan consistently prescribed pain medication to Plaintiff and did not pursue more aggressive treatment options.  The x-rays ordered by Dr. Kayfan showed nothing out of the ordinary.  Also absent from Dr. Kayfan's treatment records is any reference to a limitation on Plaintiff's functional capacity.  Dr. Kayfan does not describe Plaintiff as being unable to sit, stand, stoop, lift, or walk.  The absence of any mention of functional limitations undercuts Plaintiff's claim that Dr. Kayfan's testimony supports a finding of disability. Moreover, the question of whether Plaintiff's impairments render him unable to work is a question reserved for the Commissioner–not Plaintiff's doctor.  The ALJ properly discounted Dr. Kayfan's opinion on the ultimate issue in this case and relied on substantial evidence in doing so.

## VI.   Conclusion

For the reasons stated above, the court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and proper legal standards were applied in reaching this determination.  The Commissioner's final decision is due to be affirmed, and a separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this _____10th_____ day of September, 2008.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE